**13-1867SAG** 

## AFFIDAVIT IN SUPPORT OF A SEARCH WARRANT

I, Marjorie Coyne, being duly sworn depose and state:

1.      I have been employed by the Baltimore County Police Department since November 1988. I have been assigned as a Detective to the Economic Crimes Team since 2001 and was assigned to the United States Secret Service Federal Fraud Task Force from 2005-2008. I am still deputized through the United States Secret Service Federal Fraud Task Force. I have successfully completed a twenty-six week entrance level training course in which I received training in criminal investigations while attending the Baltimore County Police Academy. My duties include, but are not limited to, conducting investigations of access device fraud and identity theft and preparation, presentation and service of criminal complaints, search warrants and arrest warrants.

2.      In addition, statements contained in this affidavit are based on information provided to me by other law enforcement agents, employees of victim banks, finance companies and car dealerships, individual identity theft victims, electronic monitoring personnel and others. I am familiar with the facts and circumstances of this investigation and I am confident that the facts and circumstances recited herein establish probable cause for the issuance of a search warrant for the search of **2252 Linden Avenue, Baltimore, Maryland, 21217**, for evidence of conspiracy to commit bank fraud in violation of 18 U.S.C. §1349, bank fraud in violation of 18 U.S.C. §1344, and aggravated identity theft in violation of 18 U.S.C. §1028A. This affidavit does not set forth every fact supporting probable cause to search the location, but I do not know of any facts not set forth herein which might weigh against a finding of probable cause to issue the requested warrant.

1



AUG 2 1 2013

**13-1867SAG**



3.      For over three years I and fellow law enforcement officers in Maryland have been investigating a group of individuals engaged in a conspiracy to commit bank fraud, bank fraud and aggravated identity theft. The leader of the group is Michael Christopher MARSHALL. MARSHALL and co-conspirators would go into automobile dealerships and purchase vehicles (usually high-end vehicles) using the personal identifiers of other individuals without their knowledge or consent.  Minimal or no payments were made on the vehicles, which were then either transferred or rented to others.

4. Until recent developments in July of this year, the law enforcement agents involved in this case were unable to locate MARSHALL because he used false addresses for his driver's license, on finance applications and on title documentation.  Indeed, arrests in this case, which has already been indicted with regard to the pre-2013 conduct, were delayed because MARSHALL could not be located.

**Background of the Investigation**

5. On March 18, 2010, Michael Christopher MARSHALL was stopped by Baltimore City Police Department for traffic violations while driving a 2007 Mercedes S550, silver in color, bearing Maryland registration number 67882CA. MARSHALL advised officers his name was Darnell Johnson. During the routine traffic investigation, the officer found that the tag displayed on the vehicle actually belonged on a 2008 Infinity registered to Michael Christopher MARSHALL. The officer obtained a photograph of MARSHALL and compared same to the individual who identified himself as Darnell Johnson and found that the driver was actually MARSHALL. MARSHALL was arrested for driving on a revoked/ suspended license.  During the inventory search of the vehicle after MARSHALL's arrest, counterfeit currency was located

2

**13-1867SAG**



under the driver's seat of the vehicle. As a result, the USSS was contacted and SA Brian Bonus was assigned to assist.

6.    Due to counterfeit currency being found in the vehicle, SA Bonus began an investigation to seize the above mentioned vehicle. After receiving records subpoenaed from BMW Bank of North America, it was revealed that on December 21, 2009 an individual using the name Michael Christopher MARSHALL went into Northwest BMW, located at 9702 Reisterstown Road, Owings Mills, MD 21117, and purchased the 2007 Mercedes S550. MARSHALL used the date of birth of August 4, 1981 and a social security number ending in 1581. The address listed on the application for MARSHALL was 4200 Fairview Avenue in Baltimore, Maryland, 21216, with a phone number of 410-916-3310. MARSHALL indicated that he made $72,000 a year as an engineer for "Struchures [sic] Home Building." The vehicle sale price was $56,669 and was financed through BMW Bank of North America. Identification was provided in the form of a Maryland Identification card in the name of Michael Christopher MARSHALL with a date of birth of March 14, 1979, displaying soundex number M-***-***-***-194 with an address of 4200 Fairview Avenue, 21216. The original tag issued for this vehicle was 67883CA. Further investigation revealed that MARSHALL did not reside at the address on the application or on his Maryland Identification Card. BMW Bank of North America is FDIC insured.

7.    While conducting the seizure investigation for the above mentioned vehicle it was also learned that on February 1, 2010 MARSHALL had entered the Heritage Mazda car dealership located at 11220 Reisterstown Road, Owings Mills, MD 21117 and purchased a 2008 Infinity G37. MARSHALL completed the application with a date of birth of August 4, 1981 and a social

3

**13-1867SAG**



security number ending in 1581. The address listed on the application for MARSHALL was 4200 Fairview Avenue, 21216, with a previous address in Panguitch, UT and a phone number of 443-590-9109. MARSHALL indicated that he made $6300 a month as an engineer for Southern Home Builders. As identification, MARSHALL provided the same Maryland Identification card in the name of Michael Christopher MARSHALL with a date of birth of March 18, 1979, displaying soundex number M-***-***-***-194 and an address of 4200 Fairview Avenue, 21216. The vehicle sale price was $30,650 and it was financed through Suntrust Bank. The tag issued to this vehicle was 67882CA. This is the same tag that was displayed on the 2007 Mercedes on March 14, 2010 during the traffic stop in Baltimore City. This vehicle was later repossessed by Suntrust Bank for non-payment. Suntrust Bank is FDIC insured.

      8. Investigation further revealed that the personal identifying information provided for the purchase of the two above mentioned vehicles actually belongs to a Michael **J.** Marshall (not Michael Christian MARSHALL). Michael J. Marshall resides in Panguitch, UT. SA Bonus contacted Michael J. Marshall and learned that not only were vehicles purchased using the victim's personal identifying information, but that someone was also able to gain access into his Bank of America account and conducted transactions. In addition, his identity information was also used to open a Lazy Boy account in the victim's name (and using his identifiers) in Maryland. Investigators were able to determine that the identification used to open the new account was a valid Maryland identification card issued to Michael Christopher MARSHALL. Victim Michael J. Marshall advised that he did not give anyone permission to use his information to obtain vehicles or access/open accounts.

4

13-1867SAG 

9.  On or about May 28, 2010, an individual went into Auto Showcase located at 2308 Bel Air Road in Fallston, Maryland, 21047, to purchase a 2007 Mercedes S550, white in color, VIN #WDDNG71X27A115182. The individual identified himself as Glenn Young with a date of birth of November 14, 1965 and a social security number ending in 0019.The subject provided an address of 57 Steeplechase Lane, North East, Maryland 21901 and a telephone number of 443-453-3770.  A Maryland Driver's License was provided as identification, soundex number Y-***-***-***-166, in the name of Glenn Young and displaying the address listed above. The individual indicated he worked at Rookies International as a sports agent and made $6500 a month income. The vehicle sale price was $61,563 with a $2000 down payment and $59,563 financed through Susquehanna Bank, which is FDIC insured.  On June 16, 2010 a second credit application was filed using all the same information on the original application, showing the vehicle sale price as $61,873 with a $2000 down payment for a total of $59,873 to be financed through HealthCare United Federal Credit Union.  HealthCare United Federal Credit Union is insured by the National Credit Union Share Insurance Fund.

10.  Representatives of Auto Showcase advised that although they didn't know Glenn Young, the person who brought Glenn Young into the dealership was known to them as Michael KELLY.  KELLY on occasion would bring customers into the dealership.  Moreover, he had filled out a job application with the dealership and provided a contact number of 443-825-9554. The white 2007 Mercedes S550 purchased by "Glenn Young" on May 28, 2010, was ultimately determined to have been purchased using a stolen identity.  It was recovered by the Baltimore County Police as a fraudulently purchased vehicle.  The Maryland Driver's License provided by "Glenn Young" as identification was determined to be counterfeit.

11.  Multiple additional purchases similar to those described above occurred in the Spring and Summer of 2010. In these transactions, the same individual posing as Glenn Young purchased vehicles for both MARSHALL and KELLY, including purchasing an Audi S5 for MARSHALL and a BMW 650i for KELLY at the same time, claiming to be their "Uncle Glenn."   Each time, "Glenn Young" provided a counterfeit Maryland driver's license as identification.

12.  On September 20, 2010 Detective Coyne spoke with victim Glenn Young.  Mr. Young advised that he is a professor at the University of California. Although he has been to the District of Columbia recently, he hasn't been to Maryland for two or three years. He is unsure how anyone could have obtained his personal identifying information. Mr. Young further stated that he had identity theft issues in 2009 when he received a bill from GE Money bank in relation to a credit card. It was resolved and he didn't have any further problems until May 2010. He received a call from State Farm in reference to new account in Baltimore. Since he already had an account with State Farm and lived in California, they contacted him to confirm the new account.  Mr. Young indicated the new account was not his and he put a credit alert on his credit. Soon after, he received a call from Suntrust Bank that someone was trying to get instant credit at an auto auction and they called to confirm due to the credit alert.  Mr. Young stated that he put a freeze on his credit and has been monitoring it since that time.

13.  The vehicles purchased by MARSHALL, KELLY, and the individual posing as Glenn Young were all linked to the conspiracy through the identities used to purchase or finance the vehicles, the phone numbers and addresses on the applications for financing, the insurance policies used to drive the vehicles off the lot (and the phone numbers used on those policies), and

6



various moving violations committed while individuals associated with the scheme were driving the vehicles. For example, a check of various computer systems revealed that on June 30, 2010 Michael MARSHALL was arrested by Baltimore City, report #104F14297, driving a 2009 Audi that was purchased fraudulently. MARSHALL was arrested for an outstanding warrant. The vehicle was towed to the Baltimore City storage facility and ultimately returned to the defrauded credit union which financed the vehicle.

14. By the summer of 2010 it appeared that the group had ceased these activities. Although the investigation was not closed, other investigations with continuing conduct took precedence. Throughout this time frame and continuing to the present, MARSHALL used a variety of addresses in and around Baltimore City on applications and as his address of record with the Maryland Motor Vehicle Administration. He did not reside at any of these addresses.

**New Criminal Conduct**

15. On June 7, 2013 MARSHALL entered the Heritage Chrysler dealership after having been pre-approved for a vehicle loan through Chrysler Capital. MARSHALL had already been assigned a salesman and they originally went to the used car lot because that was where the car for which MARSHALL was pre-approved was located. According to the salesman, MARSHALL indicated that he didn't really like that car and was instead interested in a 2013 Dodge Charger. A request for additional financing was submitted to the finance company, since the vehicle cost more than his pre-approved amount. The additional financing was approved. MARSHALL then indicated that he really wanted a Dodge Ram truck and asked them to request financing for the truck, which cost more than the Dodge Charger. The finance company indicated that he could not be approved for the truck unless he provided further documentation of his

**13-1867SAG**



income. At this time, MARSHALL indicated that he would take the Charger. The paperwork was completed for the purchase of the 2013 Dodge Charger, Black in color, VIN 23CDXHG0DH642946 in the amount of $41,630.06. The paperwork indicates that $2000 in cash was due upon delivery and there was a $2500 rebate, lowering the final amount due to be $37,130.06. On the credit application, MARSHALL indicated that his social security number ended in 6248 and that he resided at 780 W. Cross Street in Baltimore, Maryland 21230 with a home phone number of 410-713-5367 and a work number of 443-590-9109. MARSHALL provided his correct name and date of birth. The social security number, however, did not belong to him. In addition, MARSHALL did not reside at 780 W. Cross Street.

16. The salesman for this transaction indicated that MARSHALL provided a Georgia driver's license as identification, although he stated he resided in Maryland. Clark further stated that while he was talking to MARSHALL, one of the salesmen called the work phone number listed for MARSHALL on the application and the female who was with MARSHALL, and at the time walking on the showroom floor, answered the phone. They thought this was odd and indicated same to the finance company, however, the finance company approved the deal despite the concerns of the sales staff. MARSHALL took delivery of the vehicle immediately.

17. Approximately one week later the financing bank contacted Heritage Chrysler and indicated that they needed a copy of a social security card for MARSHALL because they the social security number on the application was not assigned to him. MARSHALL was difficult to reach on the numbers provided, but eventually did come in and provided a social security card, which was copied by the dealership. The bank then indicated to the dealership that the social

8



security number provided did not belong to MARSHALL (it belonged to a young girl) and that therefore they were not going to finance the deal for the 2013 Dodge Charger.

18.   Around this time, MARSHALL had the 2013 Dodge Charger towed to the dealership's body shop to be repaired. The body shop determined that the vehicle had been run through a large amount of water causing damage and seizing up the engine. The vehicle was retained by the dealership at this time. The dealership was further required to buy back the original loan from Chrysler Capitol and will most likely not be able to resell the vehicle due to the seized engine and water damage done to the vehicle.

19.   Meanwhile, a victim from an earlier fraudulent purchase reported that MARSHALL had gone to yet another dealership, attempting to purchase a vehicle using the victim's identity information. Because of the credit alerts the victim had placed on his account, the attempted purchase was thwarted.

20.   Additional investigation is underway with regard to at least one additional vehicle purchased by MARSHALL in June of this year.

21.   During the investigation of the new activity, your affiant learned that MARSHALL is currently on home detention to complete his sentence stemming from various traffic violations in Worcester County. Your affiant contacted the monitoring company and spoke with the person responsible for monitoring MARSHALL.  MARSHALL's home detention began on or about June 3, 2013.  The person responsible for monitoring MARSHALL indicated that his residence of record is listed as **2252 Linden Avenue, Baltimore, MD 21217** and verified that the electronic monitoring confirmed that he actually resided at this address and that he doesn't usually leave the residence until between 12:00PM and 1:00PM. She further indicated that

9

## 13-1867SAG



MARSHALL has a 10:00PM curfew, however, he is typically late. The individual responsible for monitoring MARSHALL stated that MARSHALL advised them that he runs a business leasing cars and would need to be able to move about freely between two businesses as well as various body shops where he would need to take the vehicles, since he does not have his own shop. She further advised that she has been keeping track of his whereabouts since his monitoring began, and he frequents two business locations: 280 Southwest Belvedere Avenue in Baltimore, 21215 and 4810 Belair Road in Baltimore, Maryland 21206. Additional investigation revealed that "MJ Auto Repair and Towing" and "Rim Source Motorsports" were housed at these locations, respectively. MARSHALL does not appear to own either business.

22. The records of the electronic monitoring company were obtained pursuant to a subpoena. These records reflect that MARSHALL has continued his involvement in this scheme, personally purchasing vehicles with stolen identity information even while on electronic monitoring. Since the June 3, 2013, the monitoring device reflects MARSHALL's presence at several local dealerships.

23. Further, a search of MARSHALL's vehicle history shows that he has numerous vehicles registered to him at this time. A search of wage records indicates that he is not currently employed.

24. An investigation into the target residence, **2252 Linden Avenue, Baltimore, MD 21217**, reveals that it is leased to Smita SHANDELYA, MARSHALL's god-sister. SHANDELYA was also indicted by the grand jury in this case. The building is occupied by MARSHALL and SHANDELYA.

10



**13-1867SAG**

25. Based upon my training and experience, your affiant knows that individuals engaged in fraud and identity theft typically keep evidence related to these crimes in their residence, especially when, as in this case, they have used the same identity information in more than one transaction. Moreover, MARSHALL is using the fraudulently purchased vehicles in his "automobile rental" business, such that business records relating to these vehicles – purchase, title and insurance records – may also be present in MARSHALL's residence.

**Conclusion**

26. In summary, MARSHALL has been involved in utilizing the social security numbers of other individuals to purchase cars since 2009 and, although he is on home detention, he is still utilizing stolen identity information, such as victims' social security numbers, to continue to purchase vehicles. Based upon my training and experience, your affiant believes that the records relating to these purchases, as well as personal identifying information of victims in the scheme will be found at the residence of MARSHALL, located at **2252 Linden Avenue, Baltimore, Maryland, 21217**.

27.     On February 28, 2013, MARSHALL was one of five members of this conspiracy indicted by a federal grand jury sitting in the District of Maryland. Arrests of the defendants in this case were delayed in part because MARSHALL's residence was unknown at that time. Takedown of the case is now planned to occur within the next 10 days, simultaneous with the execution of this warrant, if issued. This is the first address at which MARSHALL's residence can be confirmed. Indeed, MARSHALL has provided his real address on only one occasion – for installation of his electronic monitoring device, which confirms his residence at **2252 Linden Avenue, Baltimore, Maryland, 21217**.

11



**13-1867SAG**

28. Based on the preceding information, your affiant asserts that there is probable cause to believe that evidence or the fruits and instrumentalities of the crimes of conspiracy to commit bank fraud, bank fraud, and aggravated identity theft are located inside the residence of MARSHALL, located at **2252 Linden Avenue, Baltimore, Maryland, 21217**.

Marjorie Coyne
Detective
Baltimore County Police Department
USSS Fraud Task Force

Subscribed and sworn before me on

This ____ day of August, 2013.

Stephanie A. Gallagher
United States Magistrate Judge

12

13-1867SAG 

**ATTACHMENT A**
**Description of Location to be Searched**

**2252 Linden Avenue, Baltimore, Maryland, 21217.**

The target location is a three-story rowhouse with a red brick front and a gray stone porch. The building has a brown front door with the number 2252 located on the lower half of the front door. There is a brown, second story bay window above the door.

The building is the fourth building south of Whitelock Street on the west side of Linden Avenue. The building is a single family residence which has not been divided into apartments.







**13-1867SAG**

## ATTACHMENT B
### Description of Items to be Seized

All evidence, fruits, and instrumentalities of violations of Title 18 U.S.C. §§ 1349, 1344, and 1028A as described in the supporting affidavit, including the following:

1.     Documents relating the purchase or financing of any automobiles;

2.     Documents relating to the resale, leasing or renting of any automobiles or payment for same;

3.     Documents relating to the service or repair of any automobiles;

4.     Document relating to automobile insurance policies;

5.     Documents relating to the opening of any credit accounts in any name other than Smita SHANDELYA;

6.     Documents and tangible objects containing personal identity information belonging to individuals other than Smita SHANDELYA;

7.     Books, records, receipts, bank statements and records, money drafts, letters of credit, money orders and cashiers checks, receipts, passbooks, bank checks, and other items evidencing the obtaining, secreting, transporting, concealment and/or expenditure of money;

8.     Books, records, receipts, notes, ledgers, journals, diaries, financial statements, credit applications, credit reports, birth certificates, print and electronic media and other papers relating to bank fraud, identity theft, or other financial crimes;

9.     Any and all evidence, including documents and tangible objects, explaining or depicting the crimes of bank fraud, identity theft, or other related financial crimes;



**13-1867SAG**

10.    Address and/or telephone books, client lists, rosters and papers reflecting names, addresses, and/or telephone numbers;

11.    Computers, tablets, telephones, cell phones, messaging devices and pagers including any and all records of telephone numbers stored within telephones, cell phones, and pagers, records of calls made and received, text and SMS messages sent and received, voice messages stored on the device, and all other data contained within seized telephones, cell phones, messaging devices and pagers (computers and computer media, if found, will be the subject of a follow-up search warrant);

12.    Any and all false or altered identifications, Social Security Number Cards and other false supporting documents, as well as any equipment and supplies used to manufacture such documents (computers and computer media, if found, will be the subject of a follow-up search warrant);

13.    The phrase "documents and tangible objects" includes all of the foregoing items in whatever form they may have been created or stored, including all data contained or used in electronic data processing storage disks and computers (computers and computer media, if found, will be the subject of a follow-up search warrant).